[This opinion has been published in *Ohio Official Reports* at 70 Ohio St.3d 506.]

DANDINO ET AL., APPELLANTS, *v.* HOOVER, CITY MGR., ET AL., APPELLEES.

[Cite as *Dandino v. Hoover*, 1994-Ohio-525.]

*Injunction prohibiting closing Toledo House of Correction appropriate, when—*
*Portion of injunction which enjoined city activities unrelated to matters*
*addressed by ordinance passed by city council dealing with Toledo House*
*of Correction but defeated in a referendum election inappropriate, when.*

(No. 92-2273—Submitted November 16, 1993—Decided October 12, 1994.)

APPEAL from the Court of Appeals for Lucas County, No. L-91-078.

_____

{¶ 1} On July 3, 1990, the City Council of Toledo enacted Toledo Municipal Code Ordinance No. 687-90, which provides:

"Ord. 687-90 Revising Toledo Municipal Code Chapter 131, entitled Department of Natural Resources, by repealing Toledo Municipal Code 131.09 and enacting a new Toledo Municipal Code 131.09 thereby phasing out the operation of a detention facility for sentenced inmates and establishing a detention facility for pretrial defendants; and declaring an emergency.

"WHEREAS, the City of Toledo has entered into an agreement for the operation of a Regional Jail where persons sentenced by the Toledo Municipal Court will be detained after October 1990 instead of at the Toledo House of Correction; and

"WHEREAS, the Municipal Code makes no provision for the operation of a pretrial detention facility; and

"WHEREAS, The failure to appear rate of defendants in the Toledo Municipal Courts is exacerbated by the nonexistence of a pretrial detention facility; NOW,THEREFORE,

"Be it ordained by the Council of the City of Toledo:

"SECTION 1.  That Toledo Municipal Code 131.09 which provides:

"131.09 Establishment of House of Correction.

"A House of Correction for the keeping of persons convicted and sentenced to hard labor is hereby established.

"is hereby repealed.

"SECTION 2.   That a new Section 131.09 of the Toledo Municipal Code be enacted to read as follows:

"131.09  Establishment of House of Correction.

"(a) The City of Toledo will continue to operate a detention facility for convicted and sentenced persons at the House of Correction only until the Regional Jail operated by the Corrections Commission of Northwest Ohio becomes operational in October 1990.

"(b) There is hereby established a detention facility at the House of Correction for the limited purpose of holding pretrial defendants.  The pretrial defendants held shall be those by order of the Toledo Municipal Court only.

"SECTION 3.  That this Ordinance hereby is declared to be an emergency measure and shall be in force and effect from and after its passage.  The reason for the emergency lies in the fact that same is necessary for the immediate preservation of the public peace, health, safety and property and for the further reason that this Ordinance must be immediately effective in order to provide notice of the change in operation to the State, to complete necessary agreements with the Lucas County Sheriff's Department, and to provide notice to contracting jurisdictions as to when we will cease accepting sentenced inmates."

{¶ 2} Soon after the ordinance was passed, the appellants formed the "Citizens for Adequate Jails and Justice Committee" ("CAJJC").  CAJJC prepared and circulated a referendum petition advocating that Ordinance No. 687-90 be placed on the November 6, 1990 ballot in the city of Toledo for approval or

2

rejection by the voters. The required number of signatures was obtained and the referendum appeared on the ballot. The ordinance was defeated.

{¶ 3} On December 7, 1990, appellants filed a complaint against the city of Toledo as well as many city officials. The complaint included a motion for a temporary restraining order as well as a motion for a preliminary injunction. Appellants later amended their complaint.[1]

{¶ 4} Appellants contended that because the voters had defeated Ordinance No. 687-90, the house of correction could be neither closed, nor diminished in capacity, by city council.

{¶ 5} On March 6, 1991, the Court of Common Pleas of Lucas County issued an opinion and judgment entry which concluded that because the voters had rejected Ordinance No. 687-90, "the City of Toledo is bound by the referendum and can not close the Toledo House of Correction without voters [*sic*] approval." The court stated:

"It is therefore ORDERED *** that the Defendants *** shall continue to operate the Toledo House of Correction pursuant to T.M.C. Section 131.09 as enacted in 1952.

---

1. Appellants requested the following relief in its amended complaint:

"16. Plaintiffs move for a Temporary Restraining Order against Defendants that Defendants be Ordered for 14 days not to close the Toledo House of Correction, also referred to herein as 'THC', nor to move any of the City's personal property from there; to inventory and put in writing all Personal and Real Property items at THC, and to maintain and preserve all property there, and not to Transfer, nor *move*, nor damage, nor destroy, nor to change any of said property, nor to do any other acts which could or would impede the operation of the THC in the future or increase the cost thereof in the future.

"17. Plaintiffs further move for a Preliminary Injunction against Defendants to continue to operate the Toledo House of Corrections [*sic*], and all buildings on said property, at the level operated in 1989, and not to make any changes therein, without the specific Order of this Court, and for the City not to take any action or steps which could increase the cost of operating THC in the future and for such other relief to which Plaintiffs and/or any of them is entitled.

"18. Further, Plaintiffs move for a Permanent Injunction to all Defendants that each take such steps as are necessary to operate and fund the said Toledo House of Correction, at the level it was funded and operated in 1989; and for such other relief to which Plaintiffs, and/or each of them, is entitled at Law and in Equity; and that Plaintiffs recover their costs and attorney fees, herein incurred and involved." (Emphasis *sic*.)

"It is further ORDERED *** that the Defendants are enjoined from removing any inventory from the premises that in any respect reduces the facility from the 141 bed spaces previously provided.

"It is further ORDERED *** that the Defendants shall be enjoined from moving or removing any property from the premises which in any respect would impede, damage, or destroy the value of the property as a House of Correction.

"It is further ORDERED *** that the Defendants shall be enjoined from closing the Toledo House of Correction until there has been a subsequent vote of the citizens of the City of Toledo."

{¶ 6} The Court of Appeals for Lucas County reversed the trial court, holding that the trial court incorrectly interpreted the Toledo Municipal Code. Specifically, the court of appeals held that Toledo Municipal Code 101.04(a) prohibits a court from interpreting the results of the referendum as the revival of the original version of Section 131.09 of the Toledo Municipal Code. Section 101.04(a) of the Toledo Municipal Code provides:

"The repeal of a repealing ordinance does not revive the ordinance originally repealed nor impair the effect of any saving clause therein."

{¶ 7} This cause is now before this court pursuant to the allowance of a motion to certify the record.

————————————

*Lydy & Moan* and *Jeffrey Lydy*, for appellants.

*Keith A. Wilkowski*, Director of Law, and  *Edward M. Yosses*, General Counsel for appellees.

————————————

**PFEIFER, J.**

{¶ 8} Because we determine that the trial court's injunction was in part well supported by law, we partially reverse the court of appeals.

I

The Referendum was not a Repeal of a Repealing Ordinance.

**{¶ 9}** Appellees argue that Toledo Municipal Code 101.04(a) applies to the present case. The code section provides that "[t]he repeal of a repealing ordinance does not revive the ordinance originally repealed." Appellees argue that because the defeat of Ordinance No. 687-90 was the repeal of that ordinance and because Ordinance No. 687-90 was a repealing ordinance, the electorate repealed a repealing ordinance. We disagree.

**{¶ 10}** Ordinance No. 687-90 was a repealing ordinance, but was not repealed by the electorate. Because Ordinance No. 687-90 never became law, it was incapable of being repealed by the electorate's vote.

**{¶ 11}** When an ordinance recently passed by city council is placed on the ballot, that ordinance, provided it is not an emergency ordinance, is suspended from becoming law until the results of the referendum are announced. Section 81, Chapter VI of the Toledo Municipal Charter provides:

"Referendum on petition. Every ordinance passed by the Council shall be subject to the referendum if at any time within thirty days a petition signed by electors equal in number to at least fifteen percent of the total number of ballots cast for Councilmen at the preceding municipal election be filed with the Clerk, requesting that such ordinance shall be *submitted to the people for consideration*." (Emphasis added.)

**{¶ 12}** According to this section of the municipal charter, when the requisite number of signatures is placed on a petition for a referendum, the ordinance listed on the petition is placed on the ballot for approval by the electorate. Through the process of referendum, the vote of city council is replaced by the vote of the electorate. If the ordinance is not approved by the electorate, it never becomes law.

**{¶ 13}** In the present case, Ordinance No. 687-90 was not approved by the electorate when it was submitted to the people by referendum and, thus, never

became law. Because the ordinance was never the law, it is impossible to categorize the vote of the electorate as a repeal of Ordinance No. 687-90. Instead, the electorate defeated the ordinance. Thus, Toledo Municipal Code 101.04(a), which addresses the repeal of a repealing ordinance, does not apply to this case.

{¶ 14} Because the repealing ordinance was defeated, not repealed, by the electorate, the original version of Toledo Municipal Code 131.09, which establishes a house of correction, remained intact.

## II

## The Injunction was Overbroad in Scope.

{¶ 15} Although we agree with appellants that the defeat of the referendum did not repeal a repealing ordinance, we conclude that the injunction issued by the trial court was overbroad and did not narrowly enforce the legal effect of the defeated ordinance. Accordingly, we hold that the court of appeals correctly reversed certain portions of the injunction.

{¶ 16} Great caution should be exercised when a court of law enjoins the functions of other branches of government. *Garono v. State* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496, 499. Thus, only those rights which are unequivocally guaranteed should be enforced through an injunction against governmental entities.

{¶ 17} To apply this test to the present case, we must determine what rights were unequivocally granted to the electorate when it defeated Ordinance No. 687-90. Section 86, Chapter VI of the Toledo City Charter delineates those rights granted to the electorate when it defeats an ordinance submitted to it by referendum. The provision provides:

"Power of the Council to amend or repeal. After the people have legislated for themselves, either by initiating legislation or passing favorably or unfavorably upon legislation referred to it by any body, their action is final and shall not be subject to amendment or repeal, without a general vote of the people of Toledo on same."

**{¶ 18}** This provision ensures that once the electorate has voted upon legislation referred to it in the form of a referendum, only the electorate has the right to alter the result of their referendum vote. When the electorate in Toledo defeated Ordinance No. 687-90, Toledo City Council was precluded from passing legislation in the areas addressed by the defeated ordinance. Only the electorate retained the right to legislate in those areas. Thus, the trial court's injunction is appropriate to the extent it protects this exclusive right of the electorate to legislate in those areas addressed by Ordinance No. 687-90.

**{¶ 19}** When the areas addressed by Ordinance No. 687-90 and the trial court's injunction are compared, certain portions of the injunction protect areas covered by the ordinance and are, thus, permissible. Other portions of the injunction concern matters not addressed by the defeated ordinance and are, thus, not permissible. Ordinance No. 687-90 addressed whether the house of correction should be closed. Thus, the trial court appropriately enjoined city council from closing the facility. Ordinance No. 687-90 also discussed the phasing out of the house of correction. Therefore, city council is prohibited from enacting legislation which phases out the facility, and an injunction enforcing this prohibition is appropriate. We reverse the court of appeals to the extent it reversed the trial court's injunction prohibiting the closing or phasing out of the house of correction. These portions of the injunction were appropriate.

**{¶ 20}** Certain portions of the trial court's injunction against the city are inappropriate because they are not narrowly tailored to preserve the rights of the electorate created by the defeat of the November 6, 1990 referendum. The trial court's injunction forbids the removal of any property or inventory from the house of correction as well as prohibiting the reduction of capacity or funding for the facility. The amounts of property, inventory, capacity and funding are not addressed by Ordinance No. 687-90. The defeat of the ordinance did not deprive the Toledo City Council of the right to legislate in these areas. We affirm the court

of appeals to the extent its decision reversed the portions of the trial court's injunction which enjoined city activities unrelated to those matters addressed by Ordinance No. 687-90. We remand the cause to the trial court to amend its injunction in accordance with this opinion.

*Judgment affirmed in part,*

*reversed in part*

*and cause remanded.*

MOYER, C.J., A.W. SWEENEY, DOUGLAS, J.D. SWEENEY and F.E. SWEENEY, JJ., concur.

WRIGHT, J., dissents.

JAMES D. SWEENEY, J., of the Eight Appellate District, sitting for RESNICK, J.

_____

**WRIGHT, J., dissenting.**

{¶ 21} The majority errs in holding that the referendum vote on Toledo Ordinance No. 687-90 was not a repeal of a repealing ordinance, but rather, was a defeat of the ordinance and therefore Toledo Municipal Code 131.09, authorizing the establishment of a house of correction, should still be in effect. Thus, I respectfully dissent.

{¶ 22} The majority states:

"When an ordinance recently passed by city council is placed on the ballot, that ordinance, *provided it is not an emergency ordinance*, is suspended from becoming law until the results of the referendum are announced." (Emphasis added.)

{¶ 23} Section 3 of Toledo Ordinance No. 687-90 specifically states, "*** *this Ordinance hereby is declared to be an emergency measure* and shall be in force and effect from and after its passage. ***" Ordinance No. 687-90 was in force and effect on July 3, 1990. Thereafter, Ordinance No. 687-90 was placed on the

8

November 6, 1990 ballot. By referendum, the voters of the city of Toledo failed to approve the ordinance causing it to be repealed, not rejected.

{¶ 24} Toledo City Charter Section 85 states: "An emergency measure shall be subject to referendum as other ordinances or resolutions. If, upon a referendum, it be not approved, it *shall stand repealed*." (Emphasis added.)

{¶ 25} In light of the fact that Ordinance No. 687-90 was an emergency measure and was not approved upon referendum, it was repealed as provided for by the Toledo City Charter. As the ordinance was repealed, Toledo Municipal Code 101.04(a) is applicable. Toledo Municipal Code 131.09 is not revived because the repeal of a repealing ordinance does not revive the ordinance originally repealed.

{¶ 26} Accordingly, the court of appeals' decision reversing the trial court should be affirmed.

_____