DECISION AND JUDGMENT ENTRY
Defendants-Appellants Steven H. Pierson, in his official capacity as zoning enforcement officer for the City of Athens, James B. Hayes, and J.B. Hayes Excavating and Pipeline, Inc., appeal from the judgment of the Athens County Court of Common Pleas, which granted summary judgment in favor of Plaintiff-Appellee Athens Metropolitan Housing Authority on its action for declaratory judgment. The trial court also issued injunctions against appellants, ordering them not to engage in operations that the trial court found to be in violation of Athens City zoning laws.
Appellants argue that the trial court erred by granting appellee summary judgment and by issuing the injunctions against them.
For the following reasons, we affirm the judgment of the trial court, but vacate the injunctions issued against the appellants.
 Statement of Facts and Proceedings Below
This case consists of two separate appeals, by independent defendants, from the same judgment of the trial court. The appeals arise from the same facts before, and proceedings in, the lower court. Likewise, the briefs filed with this Court by appellants raise similar issues and appellee has filed only one response. As these cases — for our purposes — are factually indistinguishable, and involve the similar questions of law, we will consider them conjointly. See, e.g., State exrel. Bryant v. Akron Metropolitan Park Dist. for Summit County (1929),120 Ohio St. 464, 166 N.E. 407, affirmed (1930), 281 U.S. 74,50 S.Ct. 228; accord Thomas v. Board of Com'rs of Butler County (1923),28 Ohio App. 8, 162 N.E. 430; 5 Ohio Jurisprudence 3d (1999) 130, Consolidation of Causes; Joint Hearings, Section 409 ("Courts of review may * * * without consolidating cases, hear and determine two or more of them together for reasons of convenience * * *." (Emphasis added.)).
I.The Property, Its Proposed Use, and the Permits
Defendant-Appellant James B. Hayes owns a certain parcel of real estate located within the city limits of Athens, Ohio. This property is approximately seventy-six and one-half acres in size and is zoned for residential purposes under the Athens City Code.
Mr. Hayes is the president of Defendant-Appellant J.B. Hayes Excavating and Pipeline, Inc. (J.B. Corp.), and on August 25, 2000, filed a surface mine permit application with the Ohio Department of Natural Resources, Division of Mines and Reclamation (ODNR). The application sought a permit authorizing J.B. Corp. to excavate and remove fill dirt, consisting of clay, shale, sand, and silt, from twenty-four acres of the Hayes property. The fill dirt was apparently needed for the completion of another project, in a different area of the city, with which J.B. Corp. was involved.
In the application, Hayes and J.B. Corp. stated that after the removal of the fill dirt had been completed, the future intended use of the property was "Pasture land/Wildlife with potential for residential housing in the future. The houses would be one or two story wood frame houses on slab foundations or poured concrete walls in basement." The only immediate plans mentioned in the application regarding the development of the property, following removal of the fill dirt, was replacement of the topsoil and to sow a variety of grasses and other vegetation.
Subsequently, Hayes and J.B. Corp. filed a Land Development Checklist and Application with the Athens City Office of Code Enforcement. This application described the work to be done solely as, "Removal of Dirt for use on an adjacent project," "Removal of Dirt for use on an other project," and "Excavation of soil from permit area."
The City of Athens, on October 20, 2000, issued a zoning certificate and excavation/land development permit for "[e]xcavation of fill material" for Mr. Hayes' property. The city attached a "Letter of Agreement" with the permit. In its letter, the city, through its Service-Safety Director, notes that Section 27 of the Athens City Code, which pertains to Land Development, does not appear to apply to the removal of fill dirt from Hayes' property. Despite its inapplicability, the city proceeded to enumerate several conditions that needed required compliance by Hayes and J.B. Corp. in order for the permit to remain valid. The zoning permit was set to expire on December 31, 2000.
Thereafter, on October 31, 2000, ODNR issued a surface mine permit authorizing J.B. Corp. to remove clay, shale, sand, and silt from twenty-four acres of Mr. Hayes' land. The permit also states that it signifies "only that the application to conduct a surface mining operation meets the requirements of Chapter 1514 of the Revised Code, and as such DOES NOT RELIEVE the operator of any obligation to meet other federal, state or local requirements." (Emphasis sic.) The surface mine permit was set to expire on October 30, 2010.
 The Adjacent Property Owner: Athens Metropolitan Housing Authority
Plaintiff-Appellee Athens Metropolitan Housing Authority (AMHA) owns property adjoining the property owned by Mr. Hayes, from which the fill dirt was to be excavated. The property owned by AMHA, like Mr. Hayes' property, was also zoned for residential use.
On December 11, 2000, AMHA filed a complaint in the Athens County Court of Common Pleas against Steven H. Pierson, Director of the Office of Code Enforcement for the City of Athens, Mr. Hayes, and J.B. Corp. In its complaint, AMHA alleged that Hayes and J.B. Corp. were using, and would continue to use, the Hayes property as a commercial surface mine, in direct contravention to the Athens zoning ordinances. AMHA further alleged that it might suffer a reduction in funding due to health and safety concerns, arising from the excavation or mining on Hayes' adjacent property. AMHA also alleged that the danger, nuisance, and congestion associated with the proposed dirt removal (i.e., dust and heavy truck traffic) would result in damages to AMHA and surrounding residents.
Accordingly, AMHA sought the court's declaration that the zoning laws were applicable in the present situation, as well as an injunction directing the city's Code Enforcement Officer, Mr. Pierson, to refrain from issuing any zoning permit for any land uses not specifically permitted under the Athens City Code. AMHA also requested that the trial court enjoin Mr. Pierson from "re-issuing, extending, or modifying" the October 20, 2000 permit. Finally, AMHA sought to enjoin Mr. Hayes and J.B. Corp. from proceeding with the removal of the fill dirt beyond the twenty-four acres or after December 31, 2000, without first acquiring a proper zoning permit.
In addition, AMHA filed a motion seeking a preliminary injunction. Mr. Hayes and J.B. Corp. filed a motion to dismiss AMHA's case pursuant to Civ.R. 12(B)(6). Following a hearing, the trial court denied both of these motions.
On February 28, 2001, AMHA and Mr. Pierson filed cross motions for summary judgment. Mr. Hayes and J.B. Corp. filed notice with the trial court that they were joining in Mr. Pierson's motion for summary judgment.
In April 2001, the trial court journalized its judgment entry denying Pierson's motion for summary judgment and granting AMHA's motion. The trial court, interpreting the Athens City Code, determined that excavating, mining, or removing soil or minerals from property with the primary purpose of selling those for use off the site is not permitted in any residential district in the City of Athens. But, excavation or the removal of soil "that is incidental to concurrent development of a permitted use in a residential district, as such permitted uses are explicitly set forth in Athens City Code Section 23.04.01, is permitted only to the extent necessary to allow the explicitly listed use." Thus, the trial court enjoined Pierson, and any other person acting on behalf of the City of Athens, from issuing any permit that does not comply with its interpretation of the zoning laws. Likewise, Hayes and J.B. Corp. were also enjoined from conducting excavation or mining within the City of Athens that did not comply with the court's interpretation.
The Appeals
 I. Assignments of Error
Pierson, Hayes, and J.B. Corp. timely appealed from the judgment of the trial court. Pierson presents the following assignment of error for our review.
 THE TRIAL COURT ERRED IN GRANING [sic] SUMMARY JUDGMENT AND PERMANENT INJUNCTION.
Hayes and J.B. Corp. present the following two assignments of error for our review.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY CONSIDERING ITS PERSONAL NOTES OF STALE, NON-TRANSCRIBED ORAL TESTIMONY AT AN EARLIER HEARING TO RESOLVE A FACTUAL DISPUTE, WHICH IS NOT AUTHORIZED BY OHIO R. CIV. PRO. 56(C) IN DETERMINING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.
 THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN ISSUING A PERMANENT INJUNCTION, AS PLAINTIFF'S COMPLAINT FAILED TO ADEQUATELY SET FORTH THE MINIMUM REQUIREMENTS FOR INJUNCTIVE RELIEF UNDER CIVIL RULE 56 [sic] OR O.C.R. § 713.13 AND ITS REQUEST WAS NOT SUPPORTED BY AN ADEQUATE EVIDENTIARY BASIS.
Appellants' assignments of error consist of and raise two proposed issues: 1) the propriety of the trial court's granting of summary judgment, and 2) the propriety of the trial court's injunctions against the city, Hayes, and J.B. Corp. We will address these two issuesseriatim.
II. Summary Judgment
 A. Standard of Review
We conduct a de novo review of the trial court's grant of summary judgment pursuant to Civ.R. 56. See Renner v. Derrin Acquisition Corp. (1996), 111 Ohio App.3d 326, 676 N.E.2d 151. The Supreme Court of Ohio has laid out the proper test to determine whether summary judgment is appropriate.
 Under Civ.R. 56, summary judgment is proper when "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."
Welco Industries, Inc. v. Applied Cos. (1993), 67 Ohio St.3d 344, 346,617 N.E.2d 1129, 1132, quoting Temple v. Wean United, Inc. (1977),50 Ohio St.2d 317, 327, 364 N.E.2d 267, 274. Therefore, we give no deference to the judgment of the trial court. See Renner, supra.
At the outset, we note that there is no factual dispute between the parties. No one debates what is happening at the twenty-four-acre excavation site of Hayes and J.B. Corp. The only issue is the legal significance of that operation.
B. Declaratory Judgment
It is axiomatic in Ohio that in order to obtain a declaratory judgment, a party must establish three elements: (1) a real controversy between adverse parties; (2) a controversy which is justiciable in character; and (3) a situation where speedy relief is necessary to preserve the rights of the parties. See Coleman v. Ohio Adult ParoleAuth. (Nov. 19, 1997), Ross App. No. 97CA2302, unreported; see, also,Jones v. Chagrin Falls (1997), 77 Ohio St.3d 456, 674 N.E.2d 1388;Fairview Gen. Hosp. v. Fletcher (1992), 63 Ohio St.3d 146,586 N.E.2d 80; Herrick v. Kosydar (1975), 44 Ohio St.2d 128, 339 N.E.2d 626; BurgerBrewing Co. v. Liquor Control Comm. (1973), 34 Ohio St.2d 93,296 N.E.2d 261, paragraph one of the syllabus; Buckeye Quality Care Centers, Inc.v. Fletcher (1988), 48 Ohio App.3d 150, 548 N.E.2d 973.
 Inherent in these requirements is the principle that Ohio courts do not render advisory opinions. Egan v. National Distillers Chemical Corp. (1986), 25 Ohio St.3d 176, 495 N.E.2d 904; Armco, Inc. v. Pub. Util. Comm. (1982), 69 Ohio St.2d 401, 433 N.E.2d 923. "A proceeding for a declaratory judgment must be based upon an actual controversy. A proceeding does not lie to obtain a judgment which is merely advisory or which answers a moot or abstract question." Moskowitz v. Federman (1943), 72 Ohio App. 149 at 164, 51 N.E.2d 48 [at 55]. Similarly, a declaratory judgment action will not lie to obtain a judgment which is advisory in nature or which is based on an abstract question or a hypothetical statement of facts. Bilyeu v. Motorists Mutual Ins. Co. (1973), 36 Ohio St.2d 35, 303 N.E.2d 871; Cincinnati Met[.] Housing Auth. v. Union (1969), 22 Ohio App.2d 39, 257 N.E.2d 410.
R.A.S. Entertainment v. City of Cleveland (1998), 130 Ohio App.3d 125,128-129, 719 N.E.2d 641, 643-644; see, also, Blake, State Ex. Rel. OhioAcademy of Trial Lawyers v. Sheward: The Extraordinary Application of Extraordinary Writs and Other Issues; The Case That Never Should Have Been (2001), 29 Cap.U.L.Rev. 2 (discussing issues of justiciability).
A "controversy" exists when there is a "genuine dispute between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Wagner v. Cleveland
(1988), 62 Ohio App.3d 8, 13, 574 N.E.2d 533, 536, citing Burger BrewingCo., supra. Similarly, the issue of justiciability involves a question of whether the controversy has the necessary "ripeness" for review. SeeBerger Brewing Co., supra.
Additionally, a party seeking declaratory judgment must have standing to bring the action. The United States Supreme Court has framed the issue of standing as follows: "Have the [plaintiffs] alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult * * * questions? This is the gist of the question of standing." Baker v. Carr (1962),369 U.S. 186, 204, 82 S.Ct. 691, 703.
In the case sub judice, AMHA owns property adjoining Hayes' property. Apparently, AMHA's property has housing built on it that may be adversely affected by J.B. Corp.'s excavating of the Hayes property. AMHA has alleged that its property value will be adversely affected by the excavation, that it may lose federal funding for its housing project if the excavation is permitted, and that its residents will be harmed by the dust from the excavation site and the potential danger it poses. Further, AMHA alleges that the proposed excavation violates local zoning laws and that the city's issuance of the permit to J.B. Corp. and Hayes similarly violates the zoning code.
Thus, we find ourselves in agreement with the trial court, that a controversy exists between AMHA and the appellants, and that the controversy is of a justiciable nature. Likewise, AMHA has standing to bring the declaratory action. See Westgate Shopping Village v. Toledo
(1994), 93 Ohio App.3d 507, 515, 639 N.E.2d 126, 131 (discussing Brooksv. Village of Canfield (1972), 34 Ohio App.2d 98, 296 N.E.2d 290, paragraph seven of the syllabus); see, also, R.C. 2721.03; R.C. 713.13.
C. Mining Versus Excavation
Since we have found that AMHA's seeking of declaratory judgment was proper, we now address the merits of its case.
Appellants argue that the removal of fill dirt from Hayes' property does not constitute mining, but that it is merely excavation. As such, they conclude that the proposed removal of fill dirt from residentially zoned property is not a violation of local zoning laws.
However, for the following reasons, we find it immaterial whether the removal of fill dirt is characterized as surface mining or mere excavation. In either case, the issue presented remains the same — whether digging out fill material from property zoned residential, for the purpose of selling it for use at another construction site, is allowable under the City of Athens's zoning laws.
1. Surface Mining
If we characterize Hayes' and J.B. Corp.'s operation as mining, our analysis begins with R.C. Chapter 1514. R.C. Chapter 1514 regulates surface mining and provides that "no operator shall engage in surface mining or conduct a surface mining operation without a permit issued by the chief." R.C. 1514.02(A). "Surface mining" is defined as,
 [A]ll or any part of a process followed in the production of minerals from the earth or from the surface of the land by surface excavation methods, such as open pit mining, dredging, placering, or quarrying, * * * but does not include: * * * the extraction of minerals, other than coal, by a landowner for his own noncommercial use where such material is extracted and used in an unprocessed form on the same tract of land; * * * the removal of minerals incidental to construction work, provided that the owner or person having control of the land upon which the construction occurs, the contractor, or the construction firm possesses a valid building permit.
R.C. 1514.01(A). Evidently, the definition of surface mining includes the removal of the fill dirt for commercial use at another site. Seeid.; Call v. G.M. Sader Excavating and Paving, Inc. (1980),68 Ohio App.2d 41, 426 N.E.2d 798.
Further, R.C. Chapter 1514 contains a provision that specifically requires the applicant for a surface mine permit to ensure that future land use will not conflict with local zoning laws. See R.C.1514.01(A)(9)(b). Many Ohio courts, including the Supreme Court of Ohio have construed this provision to mean that R.C. Chapter 1514 has not preempted local zoning ordinances. See Set Products v. Bainbridge Twp.Bd. of Zoning Appeals (1987), 31 Ohio St.3d 260, 510 N.E.2d 373. Accordingly, the Supreme Court of Ohio held that, "The final and complete approval of the operation stems from the endorsement by both the state and local authorities." Id. at 265, 510 N.E.2d at 378.
Accordingly, if Hayes' and J.B. Corp.'s operation is considered mining, it is also subject to local zoning laws. See Set Products,supra.
Athens City Code Title 23 is known as the Zoning Code, and governs the use of land within the jurisdictional limits of the City of Athens. It specifically states that, "[w]herever [Title 23] imposes a greater restriction than is imposed by other provisions of law * * *, the provisions of [Title 23] shall govern." Athens City Code 23.01.03.
Hayes' property is zoned for residential purposes. The Athens City Code sets forth those land uses that are permissible in residentially zoned districts. Mining, or surface mining, is not found anywhere among those permitted uses. See Athens City Code Title 23. Thus, if classified as mining, the operation of Hayes and J.B. Corp. would not be a permitted use.
2. Excavation
On the other hand, if we characterize Hayes' and J.B. Corp.'s operation as excavation, and accept the proposition that it is not governed by R.C. Chapter 1514, the operation would be governed by Athens City Code Title 27. See Athens City Code 27.01.04.
Athens City Code Title 27 specifically states that, if a provision differs in degree of restrictiveness from other provisions of law, the more restrictive provision applies. See Athens City Code 27.01.05. Furthermore, we note that Title 27 deals with the method or process of land use and not the use itself. See Athens City Code 27.01.03.
The purpose for Title 27 differs from the purposes of the zoning laws. Accordingly, both Titles 23 and 27 can apply to, and govern, a single project. Title 23 of the Athens City Code dictates what is a permissible use on a particular tract of land, while Title 27 dictates how a use might be implemented. For instance, in residentially zoned districts, the construction of residences and houses is permissible. However, a portion of building a house is also governed by Title 27, to ensure that things such as slope stability and watercourses are maintained, in order to prevent erosion and increased flooding. See Athens City Code 27.01.03.
Thus, once again the issue remains whether the operation conducted on the subject property in the case sub judice is permissible under Title 23 of the Athens City Code.
As previously noted, the Athens City Code sets out specific uses that are permissible in residentially zoned districts. The code sets out several provisions that persuade us that appellee's interpretation of the zoning laws (i.e., that excavation not incidental to a permissible use is not permitted) is accurate and reflects the intent of the Athens zoning laws.
Athens City Code 23.08.01(G) provides that, "No permit for excavation or construction shall be issued by the zoning inspector, unless the plans, specifications and the use conform to the provisions of this code." In the case sub judice, the use is a commercial one — to remove fill dirt from the property through excavation and sell it for use on another piece of property. This use is not to be found anywhere among the permitted uses for residential property and is contrary to the residential nature of the zoning district. See Athens City Code 23.04.01, 23.04.02, and 23.04.03.
Also, Athens City Code 23.04.01(B)(9) provides that, "Other customary accessory uses and buildings, provided such uses are incidental to theprincipal use" are permissible. (Emphasis added.) Once again, in the present case, Hayes' and J.B. Corp.'s principal and primary use for the subject property is to excavate fill dirt from it and to then sell the excavated material. We acknowledge Hayes' claims in his mining permit application that in the future he might build homes on the property. However, the excavation of fill material cannot be said to be incidental to those ethereal plans.
Appellants cite to Atwater Twp. Trustees v. Demczyk (1991),73 Ohio App.3d 763, 596 N.E.2d 498, as support for the proposition that the excavation and sale of fill dirt does not violate residential zoning laws. However, the Eleventh Appellate District was presented with facts that are clearly distinguishable from those presently before this Court. In Demczyk, the defendant bred and raised horses on his property, which was zoned for residential purposes. The defendant had contracted with a construction and excavation company to excavate a lake and build a track for use in training the horses. The defendant submitted his plans for the lake and track to the zoning board, which approved them as being permissible agricultural uses. See id.
The excavation of the lake began and the excavating company sold the soil that was removed to a third party, with the proceeds therefrom being deducted from the defendant's construction cost. The township trustees then brought an action seeking an injunction to prevent the defendant from further excavating the lake on his property. The trial court found that the excavation of the lake and subsequent sale of the removed soil was incidental to the agricultural use of the property. See id. The Eleventh Appellate District affirmed the trial court's judgment. See id.
In the present case, the primary purpose of the excavation is to remove soil and sell it to a third party. This is markedly different from the facts of Demczyk where the excavation and sale of the soil was incidental to a permitted use.
D. Summary Judgment Conclusion
Accordingly, we agree with the trial court's interpretation of the zoning laws of the City of Athens — excavation is permitted in residentially zoned districts only when it is incidental to a permitted use. Further, as no issues of fact exist and appellee was entitled to judgment as a matter of law, we find that the trial court did not err by granting summary judgment to appellee on its complaint for declaratory judgment.
Since we have found the trial court's grant of summary judgment to be appropriate, we note that any possible error by the trial court, which may have resulted from its consultation of its notes from the preliminary injunction hearing, was harmless. See State ex. rel. V Cos. v. Marshall
(1998), 81 Ohio St.3d 467, 692 N.E.2d 198, fn. 1 (noting that a correct judgment cannot be reversed by a reviewing court because that judgment was based on erroneous reasons).
III. Injunctive Relief
In their brief to this court, Hayes and J.B. Corp. argue that the trial court erred by granting a permanent injunction, enjoining them "from conducting any excavation/surface mining activity within a residential district of the City of Athens that does not comply with [the trial court's] interpretation [of local zoning laws]." Hayes and J.B. Corp. claim that the granting of the injunction against them was erroneous because AMHA failed to meet the minimum requirements under Civ.R. 65 and R.C. 713.13.
Likewise, the City of Athens — Pierson — argues that the injunction against the city, enjoining it "from issuing any permit for excavation/surface mining that does not comply with [the trial court's] interpretation [of local zoning laws]," was erroneous. Apparently, the city is arguing that the trial court "failed to exercise the great cautioned [sic] advised by the Ohio Supreme Court in Dandino [v. Hoover
(1994), 70 Ohio St.3d 506, 639 N.E.2d 767]."
We will independently address each injunction as to each appellant.
A. Standard of Review
Generally, when the equitable remedy of injunction is sought, a plaintiff must demonstrate, by clear and convincing evidence, actual irreparable harm or an actual threat of irreparable harm. See OhioUrology, Inc. v. Poll (1991), 72 Ohio App.3d 446, 454, 594 N.E.2d 1027,1032-1033; Clark v. Mt. Carmel Health (1997), 124 Ohio App.3d 308,706 N.E.2d 336. The design of an injunction is to prevent future injury and not to redress past wrongs. See Steel Co. v. Citizens for a BetterEnvironment (1998), 523 U.S. 83, 118 S.Ct. 1003; City of Cleveland v.Div. 268 of Amalgamated Ass'n of St. Elec. Ry. Motor Coach Emps. ofAmerica (1948), 84 Ohio App. 43, 81 N.E.2d 310.
"The issuance of an injunction lies within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion."Clark v. Mt. Carmel Health, 124 Ohio App.3d at 315, 706 N.E.2d at 340; see, also, Garono v. State (1988), 37 Ohio St.3d 171, 173,524 N.E.2d 496, 498. The Supreme Court of Ohio has noted on numerous occasions that the term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court acted unreasonably, arbitrarily, or unconscionably. See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219, 450 N.E.2d 1140, 1142.
B. Hayes and J.B. Corp.
R.C. 713.13 authorizes the issuance of an injunction to prevent or terminate a violation of a zoning ordinance or regulation. It states,
 No person shall erect, construct, alter, repair, or maintain any building or structure or use any land in violation of any zoning ordinance or regulation enacted pursuant to sections 713.06 to 713.12, inclusive, of the Revised Code, or Section 3 of Article XVIII, Ohio Constitution. In the event of any such violation, or imminent threat thereof, the municipal corporation, or the owner of any contiguous or neighboring property who would be especially damaged by such violation, in addition to any other remedies provided by law, may institute a suit for injunction to prevent or terminate such violation.
R.C. 713.13.
"R.C. 713.13 gives an owner of contiguous or neighboring property the right to injunctive relief only if it is shown that he is or will be especially damaged by the zoning violation." Matter v. Rittinger (Aug. 26, 1988), Ross App. No. 1385, unreported; see, also, Holsinger v. Haaf
(Nov. 1, 1996), Scioto App. No. 96CA2404, unreported.
Hayes' and J.B. Corp.'s arguments concerning the permanent injunction are twofold. First, they argue that the injunction was improper because AMHA failed to aver or plead some form of special injury. Second, they argue that the injunction was improper because AMHA failed to put forth evidence that they were "especially damaged" by the excavation of the fill dirt from the adjoining property (i.e., zoning violation).
We initially note that, contrary to the general rule, where a statute grants an injunctive remedy, the entity that seeks the injunction need not plead or prove an irreparable injury or no adequate remedy at law. See State ex rel. Pizza v. Rezcallah (1998), 84 Ohio St.3d 116,702 N.E.2d 81; Ackerman v. Tri-City Geriatric and Health Care, Inc. (1978),55 Ohio St.2d 51, 378 N.E.2d 145. The Supreme Court of Ohio has found that, "It is established law in Ohio that, when a statute grants a specific injunctive remedy to an individual or to the state, the party requesting the injunction `need not aver and show, as under ordinary rules in equity, that great or irreparable injury is about to be done for which he has no adequate remedy at law * * *.'" Ackerman v. Tri-CityGeriatric and Health Care, Inc., 55 Ohio St.2d at 56, 378 N.E.2d at 148, quoting Stephan v. Daniels (1875), 27 Ohio St. 527, 536.
Accordingly, Hayes' and J.B. Corp.'s arguments that AMHA was not entitled to injunctive relief because it failed to properly plead or aver some irreparable injury are without merit.
However, the mere showing of a zoning violation is insufficient for the issuance of an injunction under R.C. 713.13, when the action seeking the injunction is brought by an adjoining landowner. See Matter andHolsinger, supra. The landowner seeking the injunction must show that he or she is, or will be, especially damaged by the ongoing, or threatened, zoning violation. See id.
 In light of our decision in Matter, we conclude that there was insufficient evidence presented to the trial court to support a finding that appellees were going to be especially damaged by appellants' proposed use of their property * * *. This should not be construed to mean that we do not believe such evidence exists or can be produced, merely that such evidence was not admitted by appellees. Therefore, if appellees continue to desire such an injunction, we believe a hearing should be conducted by the trial court on remand in order to further develop a factual basis for the issuance of an injunction.
Holsinger, supra. Thus, to issue a permanent injunction, absent a showing by AMHA how it will be especially damaged, would amount to an abuse of discretion.
C. City of Athens — Pierson
Unlike the injunction against Hayes and J.B. Corp., the injunction sought against the City of Athens is not a statutorily authorized injunction under R.C. 713.13.
We acknowledge the Supreme Court of Ohio's instruction that "Great caution should be exercised when a court of law enjoins the functions of other branches of government." Dandino v. Hoover, 70 Ohio St.3d at 510,639 N.E.2d at 770. While a trial court's power to issue an injunction is discretionary and adaptable to the circumstances before it, cf. City ofSeven Hills v. City of Cleveland (1980), 1 Ohio App.3d 84, 91,439 N.E.2d 895, 902, such an injunction will issue only in limited circumstances: "The courts will not restrain, by injunction, the duly elected orappointed officials of a municipality * * * from carrying out suchconferred power, where there is no gross abuse of discretion or bad faithon the part of such officers, claimed or established." City of Cincinnativ. Wegehoft (1928), 119 Ohio St. 136, 162 N.E. 389, syllabus. To do otherwise would amount to governance by injunction. See Newburgh Heightsv. Tegg (1929), 32 Ohio App. 248, 167 N.E. 894.
In the case sub judice, no allegations of fraudulent, illegal, arbitrary, or capricious acts by the city's officers, and Mr. Pierson in particular, were alleged or established. Thus, no injunction against the city should have been issued by the trial court. See id.
Furthermore, the Athens City Code provides for the enforcement of zoning laws through a zoning inspector. The Athens City Code states,
 All departments, officials and public employees of the city vested with the duty or authority to issue permits or licenses shall conform to the provisions of this code and shall issue no permit or license for any use, building or purpose in conflict with the provisions of this code. Any permit or license, issued in conflict with the provisions of this code, shall be null and void.
Athens City Code 23.08.01(A).
Thus, Mr. Pierson, the City of Athens, and it employees do not have discretion to issue permits and licenses that conflict with the Athens zoning laws. The code specifically prohibits city officials from issuing permits in conflict with its zoning code. See id. And, if such a permit is issued, the code declares it to be null and void. See id. As we have interpreted the Athens Zoning Code to forbid the operation conducted by Hayes and J.B. Corp., and the City of Athens and its officers are bound by that interpretation, any future permit issued to Hayes or J.B. Corp. that runs afoul of the Athens Zoning Code as interpreted by the court would be null and void by operation of the code itself. Accordingly, it appears that the issuance of the injunction was unnecessary.
Therefore, the trial court abused its discretion by issuing its injunction against the city. However, as we have previously noted, the City of Athens is bound by the declaratory judgment and as such is expected to abide by the court's interpretation.
III. Conclusion
Accordingly, we AFFIRM the trial court's granting of summary judgment on AMHA's claim for declaratory judgment. However, we vacate the trial court's subsequently issued injunctions against Hayes, J.B. Corp., and the City of Athens. The cause is remanded for a hearing to further develop a factual basis for a grant of injunctive relief, should appellee continue to desire to seek such relief.
JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED IN PART AND REVERSED INPART and the cause REMANDED to the trial court for further proceedings consistent with this opinion, costs herein taxed equally among the parties.
The Court finds that there were reasonable grounds for this appeal.
It is further ordered that a special mandate issue out of this Court directing the ATHENS COUNTY COURT OF COMMON PLEAS to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as of the date of this Entry.
oA certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, J. Concurs in Judgment Only.
Abele, P.J. Not Participating.