McNAMARA et al., Appellants and Cross–Appellees,

v.

CITY OF RITTMAN, Appellee and Cross–Appellant.

[Cite as *McNamara v. Rittman* (1998), 125 Ohio App.3d 33.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 97CA0003.

Decided Jan. 7, 1998.

34

*Steve J. Edwards* and *Andrew Hyde,* for appellants and cross–appellees.

*Jack R. Baker* and *Mel L. Lute, Jr.,* for appellee and cross–appellant.

BAIRD, Judge.

"This case involves over fifty homeowners that have been dewatered by the City of Rittman as a result of the City of Rittman's pumping of groundwater during the operation of its municipal wellfield."[1]

The appellants are homeowners and residents who live in and around the village of Sterling in Wayne County, Ohio. The appellants use wells to supply their household and domestic water needs. In 1973, the city of Rittman ("city") purchased a parcel of property near the village of Sterling. Preliminary studies were conducted and plans were approved for the drilling of three wells on the parcel. The wells were completed and placed into operation by 1980. Approximately five hundred thousand to seven hundred fifty thousand gallons of water a day are pumped from this wellfield to serve the needs of the city's residents.

---

[1]. This is the first line of the appellants' brief to this court, and aptly summarizes the appellants' case. The issue of causation was not reached by the trial court due to its determination that the city of Rittman was immune from liability pursuant to R.C. Chapter 2744.

On January 4, 1994, the appellants filed suit against the city, alleging that they suffered damages as a result of the city's use of the wellfield. Specifically, they claim that the aquifer from which they draw has been lowered due to the city's pumping of huge amounts of water, forcing them to endure water shortages and poor quality water, as well as forcing them to drill new wells and purchase new pumps and water-softening equipment. The appellants' first amended complaint asserts two claims. The first claim alleges that the city caused unreasonable harm to the appellants as a result of its pumping of groundwater from the wellfield. The second claim alleges that the appellants will suffer irreparable harm in the future and that the appellants have no adequate remedy at law. The appellants pray for both damages and an injunction. We will address the appellants' prayer for damages in the first part of this opinion, and the appellants' prayer for a permanent injunction against the city in the second part of this opinion.

The city denies that its use of the wellfield has caused appellants' problems. The city claims that most of the appellants' wells were shallow, with older narrow well casings and shallow well pumps. The city alleges that the redrilling of these wells was inevitable due to the age of the wells and the advent of newer technology.

The trial court granted the city's motion for partial summary judgment pursuant to R.C. 2305.09(D), which sets forth a four-year statute of limitations for property damage claims.

The city thereafter moved the court for summary judgment "as to all the claims of all the plaintiffs" based on sovereign immunity pursuant to R.C. 2744.02, Ohio's Political Subdivision Tort Liability Act. The trial court denied the motion. The morning of the trial, the court met with counsel, and learned that the appellants intended to present no evidence that the city was negligent in its operation of the wellfield. The trial court reconsidered and granted the city's motion for summary judgment pursuant to R.C. 2744.02, dismissing all the appellants' claims.

The appellants appeal from the granting of summary judgment, assigning three errors. The city cross-appeals, assigning two errors. We affirm.

I

For ease of discussion, we will address the appellants' third assignment of error and the city's second cross-assignment of error together in the first part of this opinion. The appellants' third assignment of error states:

"The trial court committed error by reversing itself and holding that defendant was entitled to summary judgment because of sovereign immunity under Revised Code Chapter 2744."

The city's second cross-assignment of error states:

"The trial court erred in failing to grant summary judgment in favor of the city of Rittman based on upon the discretionary provisions set forth in Revised Code § 2744.03(A)(3) and Revised Code § 2744.03(A)(5)."

These assignments of error require us to determine if and under what conditions a municipality's establishment and operation of a wellfield outside of its boundaries expose it to liability to individual homeowners and residents who are affected by such wellfield.

### A. Summary Judgment

In reviewing a trial court's entry of summary judgment, an appellate court applies the same standard used by the trial court. *Perkins v. Lavin* (1994), 98 Ohio App.3d 378, 381, 648 N.E.2d 839, 840–841. Pursuant to Civ.R. 56(C), summary judgment is proper if "(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the nonmoving party." *State ex rel. Howard v. Ferreri* (1994), 70 Ohio St.3d 587, 589, 639 N.E.2d 1189, 1192.

Doubts must be resolved in favor of the nonmoving party. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 686, 653 N.E.2d 1196, 1201–1202. Since only legal questions exist, no special deference is to be afforded the trial court upon a review of an entry of summary judgment. *Lorain Cty. Bd. of Commrs. v. United States Fire Ins. Co.* (1992), 81 Ohio App.3d 263, 267, 610 N.E.2d 1061, 1063–1064. We will, therefore, review the matter *de novo*. *Pennsylvania Lumbermens Ins. Corp. v. Landmark Elec., Inc.* (1996), 110 Ohio App.3d 732, 743, 675 N.E.2d 65, 73; *Tyler v. Kelley* (1994), 98 Ohio App.3d 444, 446, 648 N.E.2d 881, 882. In viewing disputed evidence, we construe all facts in the nonmoving party's favor. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 341, 617 N.E.2d 1123, 1126–1127.

The burden of showing that no genuine issue of material fact exists falls upon the party requesting summary judgment, and is specified in *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 274:

"The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some *evidence* of the type listed in Civ.R. 56(C) which affirmatively

demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." (*Emphasis sic.*)

These principles were reaffirmed in *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 429, 674 N.E.2d 1164, 1170–1171. The moving party is required to state the basis for his motion and then point to "pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which support the motion. Civ.R. 56(C). Merely alleging that a nonmoving party lacks evidence does not satisfy this obligation. See *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 147, 677 N.E.2d 308, 318–319.

■ We initially note that the trial court must base its grant of a motion for summary judgment on evidence meeting the standards of Civ.R. 56(C), quality evidence, not on statements counsel makes to the court regarding what a party intends or does not intend to prove. Therefore, we must examine the evidence submitted with the city's motion for summary judgment and determine whether, based on that evidence, summary judgment in favor of the city was appropriate.

## B. Water Rights in Ohio

It is clear that Ohio now recognizes a cause of action for "unreasonable dewatering." Until 1984, Ohio applied a rule regarding water rights dating back to the era of the Civil War. *Frazier v. Brown* (1861), 12 Ohio St. 294, 1861 WL 32, overruled by *Cline v. Am. Aggregates Corp.* (1984), 15 Ohio St.3d 384, 15 OBR 501, 474 N.E.2d 324. In *Frazier, supra,* at 308, the Supreme Court of Ohio held:

"There are no correlative rights existing between the proprietors of adjoining lands, in reference to the use of such water in the earth, or percolating under its surface. Such water is to be regarded as part of the land itself, to be enjoyed absolutely by the proprietor within whose territory it is; and to the law governing the use of running streams is inapplicable."

The *Frazier* court further stated:

"In the absence of express contract, and of positive authorized legislation, as between proprietors of adjoining lands, the law recognizes no correlative rights in respect to underground waters percolating, oozing or filtrating through the earth[.]" *Id.* at 311.

This was the law in Ohio until 1984, when the Supreme Court of Ohio reconsidered the common law as it applied to groundwater in *Cline,* 15 Ohio St.3d

384, 15 OBR 501, 474 N.E.2d 324. In *Cline,* American Aggregates Corporation operated a sand and gravel quarry. The quarrying procedure involved pumping water from the pits created by the operation. Several landowners sued American Aggregates, claiming that their wells had been "dewatered" and polluted as a result of American Aggregates' operation. In overruling *Frazier* and its progeny and in adopting Section 858 of the Restatement of the Law 2d, Torts (1977), the court specifically held the following:

"(1) A proprietor of land or his grantee who withdraws ground water from the land and uses it for a beneficial purpose is not subject to liability for interference with the use of water by another unless

"(a) the withdrawal of groundwater *unreasonably* causes harm to a proprietor of neighboring land through lowering the water table or reducing artesian pressure,

"(b) the withdrawal of ground water exceeds the proprietor's *reasonable* share of the annual supply or total store of groundwater, or

"(c) the withdrawal of the ground water has a direct and substantial effect upon the watercourse or lake and *unreasonably* causes harm to a person entitled to the use of its water." (Emphasis added.)

*Cline, supra,* 15 Ohio St.3d at 387, 15 OBR at 503, 474 N.E.2d at 327. Justice Holmes, in his concurrence, said that *industries* which use large amounts of water will not be liable unless their use is *unreasonable. Id.* at 389, 15 OBR at 504–505, 474 N.E.2d at 328 (Holmes, J., concurring). In 1990, the General Assembly enacted R.C. 1521.17,[2] codifying the factors to be considered when determining the "reasonableness" of water use as suggested in Section 850(A) of 4 Restatement of the Law 2d, Torts (1977).[3]

Upon remand of *Cline,* the court of appeals held that the new rule could be applied retrospectively. *Cline v. Am. Aggregates Corp.* (1989), 64 Ohio App.3d

---

**2.** The Revised Code codifies the factors suggested in Section 850(A) of 4 Restatement of the Law 2d, Torts (1977). The actual *cause of action* for unreasonable water use, however, is set forth in Section 858 of the Restatement and was adopted by the Supreme Court of Ohio in *Cline,* 15 Ohio St.3d 384, 15 OBR 501, 474 N.E.2d 324. In other words, Section 850(A) defines the term "unreasonable" as it is used in Section 858.

**3.** R.C. 1521.17 states:

"(A) The general assembly hereby finds and declares that the determination of the reasonableness of a use of water depends upon a consideration of the interests of the person making the use, of any person harmed by the use, and of society as a whole.

"(B) In accordance with section 858 of the Restatement (Second) of Torts of the American law institute, all of the following factors shall be considered, without limitation, in determining whether a particular use of water is reasonable:

"(1) The purpose of the use;

"(2) The suitability of the use to the watercourse, lake, or aquifer;

503, 507, 582 N.E.2d 1, 3–4; see, also, *Wood v. Am. Aggregates Corp.* (1990), 67 Ohio App.3d 41, 46, 585 N.E.2d 970, 973–974.

### C. Municipal Immunity

The case before us is distinguishable from *Cline.* Here, we are considering the actions of a political subdivision, which forces us to examine the extent to which a political subdivision is liable in tort in light of the state's adoption of the Restatement rule for reasonable water use. In the past fifteen years, Ohio has both judicially and legislatively attempted to define sovereign immunity as it applies to political subdivisions. We conclude that immunity was available to the city for proprietary functions which required the exercise of discretion for the time period covered by the appellants' complaint.

### 1. Common-Law Immunity

Traditionally, functions of a political subdivision have been divided into two groups: governmental functions and proprietary functions. "Governmental" functions have been described as "those duties which are imposed upon the state as obligations of sovereignty, such as protection from crime, or fires, or contagion, or preserving the peace and health of citizens and protecting their property[.]" *Wooster v. Arbenz* (1927), 116 Ohio St. 281, 284, 156 N.E. 210, 211. In contrast, "proprietary" functions are performed merely "for the comfort and convenience of [the city's] citizens[.]" *Id.*

The Supreme Court of Ohio discussed the effect of the governmental/proprietary distinction in *Haas v. Hayslip* (1977), 51 Ohio St.2d 135, 5 O.O.3d 110, 364 N.E.2d 1376.[4] In *Haas,* a seventeen-year old boy was shot by two Akron police officers. The parents of the boy sued the city of Akron and the two officers involved.[5] The trial court dismissed the case for failure to state a claim upon

---

"(3) The economic value of the use:

"(4) The social value of the use;

"(5) The extent and amount of harm it causes;

"(6) The practicality of avoiding the harm by adjusting the use or method of use of one person or the other;

"(7) The practicality of adjusting the quantity of water use or method of use of one person or the other;

"(8) The protection of existing values of water uses, land, investments, and enterprises:

"(9) The justice of requiring the user causing harm to bear the loss."

4. Much of the case law cited in this section reviewing the history of sovereign immunity in Ohio has been overruled. We have not included the subsequent history of these cases.

5. The court held that the municipality was still entitled to immunity in spite of R.C. 2743.01 *et seq.* (the Court of Claims Act) which waived the *state's* immunity in certain specified instances. *Haas v. Hayslip* (1977), 51 Ohio St.2d 135, 5 O.O.3d 110, 364 N.E.2d 1376.

which relief could be granted on the basis of municipal immunity. The court of appeals reversed, holding that the defense of governmental immunity was no longer available to a municipal corporation in this state. In reversing the court of appeals, the Supreme Court of Ohio held that municipal corporations are immune from liability in the performance of *governmental* functions and that the maintenance and operation of a police department is a governmental function. *Id.* at 136, 5 O.O.3d at 111, 364 N.E.2d at 1377–1378.

However, from 1854–1977, the Supreme Court of Ohio had consistently held that the defense of immunity was *not* available to a municipality for *negligence* in the performance of *proprietary* functions. *Id.* at 136, 5 O.O.3d at 111, 364 N.E.2d at 1377–1378. In other words, under the common law, "governmental" functions were absolutely protected, while "proprietary" functions were not protected if the municipality was negligent.

The courts of Ohio have also classified the activities of municipalities as either *discretionary* or *ministerial* activities. See Gleason & Van Winkle, The Ohio Political Subdivision Tort Liability Act: A Legislative Response to the Judicial Abolishment of Sovereign Immunity (1986), 55 U.Cin.L.Rev. 501, 503. A municipality was protected for acts involving discretion or judgment, while it was not protected when it merely implemented policy. *Dayton v. Pease* (1854), 4 Ohio St. 80, 1854 WL 63. The Supreme Court of Ohio has applied both distinctions (governmental/proprietary or discretionary/ministerial) over the last century and a half.[6] The common thread running through the cases which employ the discretionary/ministerial distinction is the policy of protecting a municipality when it engages in policymaking or planning.

On December 15, 1982, the Ohio Supreme Court again addressed the issue of sovereign immunity in *Haverlack v. Portage Homes, Inc.* (1982), 2 Ohio St.3d 26, 2 OBR 572, 442 N.E.2d 749. In *Haverlack*, the plaintiffs sued the city of Aurora for the negligent operation of a sewage treatment plant. The court held that the defense of common-law sovereign immunity was not available to a municipal corporation in an action for damages alleged to be caused by the *negligent operation* of a sewage treatment plant. *Id.*, paragraph two of the syllabus. The court did not address the issue of whether the municipality was immune from

---

**6.** See *Cincinnati v. Cameron* (1878), 33 Ohio St. 336, 367–368, 1878 WL 2 (applying governmental/proprietary distinction); *Fowler v. Cleveland* (1919), 100 Ohio St. 158, 169–170, 126 N.E. 72, 76 (applying a governmental/ministerial distinction); *Aldrich v. Youngstown* (1922), 106 Ohio St. 342, 346, 140 N.E. 164, 165 (applying governmental/proprietary distinction); *Wooster v. Arbenz* (1927), 116 Ohio St. 281, 284–285, 156 N.E. 210, 211–212 (applying a governmental/proprietary distinction); *Enghauser Mfg. Co. v. Eriksson Eng., Ltd.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228, paragraph two of the syllabus (applying a discretionary/ministerial distinction).

liability for its exercise of a discretionary function, because the facts of *Haverlack* did not involve a discretionary function.

A little more than six months later, on July 20, 1983, the Supreme Court of Ohio again addressed the issue of sovereign immunity, clarifying its holding in *Haverlack, supra:*

"The judicially created doctrine of municipal immunity is, *within certain limits,* abolished, thereby rendering municipal corporations subject to suit for damages by individuals injured by the negligence or wrongful acts or omissions of their agents or employees whether such agents and employees are engaged in proprietary or governmental functions.

"Under this decision abolishing municipal immunity, *no tort action will lie against a municipal corporation for those acts or omissions involving the exercise of a legislative or judicial function or the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion.* However, once the decision has been made to engage in a certain activity or function, municipalities will be held liable, the same as private corporations and persons, for the negligence of their employees and agents in the performance of the activities." (Citations omitted and emphasis added.) *Enghauser Mfg. Co. v. Eriksson Eng., Ltd.* (1983), 6 Ohio St.3d 31, 6 OBR 53, 451 N.E.2d 228, paragraphs one and two of the syllabus.

The Supreme Court of Ohio applied the *Enghauser* rule retroactively in *C & D Partnership v. Gahanna* (1984), 15 Ohio St.3d 359, 15 OBR 480, 474 N.E.2d 303; see, also, *Zagorski v. S. Euclid–Lyndhurst Bd. of Edn.* (1984), 15 Ohio St.3d 10, 15 OBR 8, 471 N.E.2d 1378. Both cases involved conduct by a political subdivision occurring before *Enghauser* was decided.

"The equal protection clause of the federal Constitution does not assure uniformity of judicial decisions. The general rule is that a decision of a court of supreme jurisdiction overruling a former decision is retrospective in its operation, and the effect is not that the former was bad law, but that it never was the law." *Zagorski, supra,* at 12, 15 OBR at 10, 471 N.E.2d at 1379–1380, quoting *Peerless Elec. Co. v. Bowers* (1955), 164 Ohio St. 209, 210, 57 O.O. 411, 411, 129 N.E.2d 467, 468.

Therefore, common-law immunity based on the discretionary nature of a municipal function was available to the city from 1980, when the wellfield began operations, until the General Assembly codified immunity for political subdivisions in Ohio.

## 2. Ohio's Political Subdivision Tort Liability Act (1985–present)

In 1985, the Ohio General Assembly enacted the Ohio Political Subdivision Tort Liability Act, codified in R.C. 2744.01 *et seq.*, reinstating immunity to political subdivisions by statute.[7] R.C. 2744.02(A)(1) classifies the functions of political subdivisions as either governmental or proprietary functions. R.C. 2744.02(A)(1) provides:

"Except as provided in Division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision in connection with a governmental or proprietary function."

Pursuant to R.C. 2744.02(A), the city is immune from liability unless division (B) of the statute provides for liability. Division (B) specifically provides for liability on the part of a political subdivision where there is *negligence* with respect to proprietary functions.

It is clear that negligence with respect to a proprietary function was required under pre–R.C. 2744 case law in order for a municipality to be liable. R.C. 2744.01 *et seq.* narrowed and codified the rule set forth in *Enghauser Mfg., supra,* reinstating sovereign immunity for injuries caused by political subdivisions arising from *governmental* and *proprietary* functions, while codifying exceptions to liability based on the old discretionary/ministerial distinction. The exception applicable here is found in subsection (B)(2) of R.C. 2744.02, which allows a plaintiff to recover for injuries caused by the negligent performance of an employee's act with respect to a proprietary function. R.C. 2744.01(G)(2)(c) classifies as a "proprietary function":

"The establishment, maintenance, and operation of a utility, including but not limited to * * * a municipal corporation water supply system."

Several statutory defenses available to a municipality merely codify the common law defenses based on the discretionary/ministerial distinction. R.C. 2744.03 provides:

"(A) In a civil action brought against a political subdivision * * * to recover damages for injury, death, or loss to persons or property allegedly caused by any act or omission in connection with a * * * proprietary function, the following defenses or immunities may be asserted to establish nonliability:

---

7. Am. Sub. H.B. No. 176, 141 Ohio Laws, Part I, 1699. "This act is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health and safety." *Id.* at Section 8, 141 Ohio Laws 1733. See Gleason & Van Winkle, The Ohio Political Subdivision Tort Liability Act: A Legislative Response to the Judicial Abolishment of Sovereign Immunity, 55 U.Cin.L.Rev. 501.

"* * *

"(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

"* * *

"(5) The political subdivision is immune from liability if the injury, death, or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use equipment, supplies, material, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, bad faith, or in wanton or reckless manner."

### 3. City is Immune Under Pre– and Post–R.C. 2744 Standards

The appellants are claiming harm from 1980, when the city began operating the wellfield, to the present day. It is clear from case law and the Ohio Political Subdivision Tort Liability Act that some form of qualified municipal immunity has existed in Ohio from the mid-nineteenth century until the present day, covering the period over which the appellants claim damages.

Applying common law and subsequent statutory law to the case before us, we find that the *general rule* is that the city is not liable for injuries arising out of its establishment, maintenance, and operation of the wellfield. Nevertheless, the city may be liable if the injury was caused by the *negligence* of the city. However, even if the appellants prove negligence, the city may escape liability if it can prove a defense available both (1) under the common law prior to the enactment of R.C. 2744.01 *et seq.* (for those acts allegedly committed by the city prior to the enactment of R.C. 2744.01 *et seq.*) and (2) under the Ohio's Political Subdivision Tort Liability Act subsequent to its enactment in 1985 (for those acts allegedly committed after the enactment of R.C. 2744.01 *et seq.*). A key element in the defenses available to the city is *discretion.* If the city was exercising discretion or judgment, then the city is not liable, *unless* that discretion was exercised with malicious purpose, bad faith, or in wanton or reckless manner.

Counsel for appellants admitted to the trial court that the appellants did not intend to show negligence on the part of the city, stating:

"And we're not claiming that the operation of their well field was negligent. We're not bringing an expert in who's going to say they could have done this better or they could have done that better."

The trial court, upon learning that the appellants did not intend to introduce evidence of negligence, granted the city's motion for summary judgment. As we

noted above, basing summary judgment on a statement of counsel does not satisfy Civ.R. 56(C).

 Irrespective of whether the trial court was correct in its determination that the appellants were required to prove negligence in order to overcome immunity (as opposed to proving the factors set forth in the Restatement balancing test for reasonable water use), we would still affirm on the basis that the city was exercising its discretion in establishing and operating the wellfield, and has proven such by submitting Civ.R. 56(C) quality evidence in support of its motion for summary judgment.

The city has cross-appealed, assigning as error the trial court's decision not to base summary judgment in favor of the city on the statutory defenses set forth in R.C. 2744.03(A)(3) and (5). As we explained above, these defenses are based on the discretion or judgment of employees of the political subdivision. Under the common law, immunity was found to apply to decisions by a city planning commission regarding the plat of a proposed subdivision based on the nature of the decisions as "basic planning and policymaking functions" by the municipality. *C&D Partnership v. Gahanna*, 15 Ohio St.3d at 364, 15 OBR at 484, 474 N.E.2d at 307–308. Citing *Enghauser*, the court stated:

"[T]his court continued tort immunity for activities involving basic planning and policymaking functions in recognition that the threat of tort liability for such activities could have a chilling effect on the ability of municipal governments to deal effectively with difficult policy issues which they must confront daily. The court in *Enghauser* remained acutely aware that such policymaking activities be at the heart of municipal governance, and that such essential acts of governmental decision making should not be subject to judicial second-guessing or harassment by the actual or potential threat of litigation." *Id.*

Post–R.C. Chapter 2744, the courts have also applied the discretionary standard, finding that the defenses set forth in R.C. 2744.03 applicable where a police investigation leading to an indictment was not conducted in bad faith or with malice, wanton misconduct or recklessness. *Miller v. Leesburg* (1993), 87 Ohio App.3d 171, 177, 621 N.E.2d 1337, 1341. By contrast, an injury caused by an employee's decision not to turn on a light does not fall within the immunity set forth in R.C. 2744.03(A)(5). *Field v. McDonald Bd. of Edn.* (Nov. 16, 1994), Trumbull App. Nos. 93–T–4901 and 93–T–4906, unreported, 1994 WL 638189. Therefore, the defenses set forth in R.C. 2744.03(A)(3) and (5), which are based on the common-law discretionary/ministerial distinction, are available to the city for the entire time period in question.

The city's activities in operating the wellfield are similar to those which Ohio courts have decided involve "weighing alternatives and making choices with

respect to public policy and planning characterized by a high degree of discretion and judgment." *Bolding v. Dublin Local School Dist.* (June 15, 1995), Franklin App. No. 94APE09–1307, unreported, 1995 WL 360227. If the employee's actions were clearly not malicious, reckless, or in bad faith, then summary judgment is appropriate. *Hackathorn v. Preisse* (1995), 104 Ohio App.3d 768, 771–772, 663 N.E.2d 384, 386–387.

The city's motion for summary judgment was granted on the basis that the appellants did not intend to prove negligence. We need not address whether that basis was correct if we find, as a matter of law, that one of the defenses available to the city has been established by the city and cannot be refuted by the appellants. We must review the motion for summary judgment and the opposition to that motion as well as the attached evidence and determine whether the trial court's granting of summary judgment to the city was proper on any basis. We are empowered to affirm the judgment of the trial court on grounds other than those relied upon by the trial court. "[A] reviewing court is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306, 309, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 222, 631 N.E.2d 150, 154.

The city asserted the defense of "discretionary function" in its motion for summary judgment and has provided evidence that discretion and judgment are involved in the establishment and operation of the wellfield. First, it was a discretionary decision to purchase the property near the village of Sterling. Second, the decision to drill three wells on the parcel, at a certain depth, was also discretionary in nature. Third, the wells generally pump one at a time, which means at those times when more than one well operates, a discretionary decision has been made as to the city's need for more water at a particular time. Fourth, the city occasionally provides emergency water to industries which do not ordinarily purchase water from the city. The decision to provide emergency water involves discretion. Finally, the decision to allow residents and businesses to tie into the city water system as new customers falls squarely into the class of decisions which require judgment and discretion.

The appellants have offered no evidence that the city's discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner. To the contrary, the city has provided evidence that it conducted studies of the aquifer and met with the residents of Sterling in order to allay their concerns before drilling the wells.

Because we find that the city has proven that its establishment and operation of the wellfield renders it immune from liability, the city's second cross-assign-

ment of error is sustained, and the trial court's granting of summary judgment as to the appellants' claim for damages was proper.

Because we hold that summary judgment in favor of the city was properly granted in light of both common-law and statutory immunity defenses available to the city during the time period over which the appellants claim damages, all other assignments of error are moot and we need not address them. App.R.12(A)(1)(c). We will however, address the appellants' claim for injunctive relief.

## II

We have previously found that "[b]y its very language and title, the [Ohio Political Subdivision Tort Liability Act] applies to tort actions for damages. See R.C. 2744.02." *Big Springs Golf Club v. Donofrio* (1991), 74 Ohio App.3d 1, 2, 598 N.E.2d 14, 14. However, in *Big Springs*, the action brought by the plaintiff was brought pursuant to R.C. 2723.01, which specifically provides for an injunction against the illegal collection or levy of taxes. The General Assembly specifically allowed for an injunction against a political subdivision in one section of the Ohio Revised Code. Barring this statutory action by immunity in another part of the Revised Code would be nonsensical and clearly contrary to the intent of the General Assembly.

It seems to us that the same policy reasons that immunize the city from liability for money damages ought to apply to a prayer for injunctive relief. In *Cincinnati v. Wegehoft* (1928), 119 Ohio St. 136, 162 N.E. 389, paragraph one of the syllabus, the Supreme Court of Ohio stated:

"The courts will not restrain, by injunction, the duly elected or appointed officials of a municipality, who are duly empowered by the municipality to select and acquire sites for and to erect thereon municipal buildings, from carrying out such conferred power where there is no abuse of discretion or bad faith on the part of such officers, claimed or established."

The court went on to say that a city's "right, and * * * duty, as well, to exercise good faith in the furtherance of good municipal government * * * cannot be enjoined by the courts" unless there was a claim of bad faith or malicious intent to injure the plaintiff's property. *Id.* at 138, 162 N.E. at 390. "Great caution should be exercised when a court of law enjoins the function of other branches of government." *Dandino v. Hoover* (1994), 70 Ohio St.3d 506, 510, 639 N.E.2d 767, 770, citing *Garono v. State* (1988), 37 Ohio St.3d 171, 173, 524 N.E.2d 496, 498-499. Only those rights which are unequivocally guaranteed should be enforced through an injunction against a governmental entity. *Dandino, supra,* at 510, 639 N.E.2d at 770. This court cannot substitute its judgment for that of the city of Rittman where the city was exercising its discretion and

where there has been no abuse of that discretion. See *Cincinnati v. Wegehoft,* 119 Ohio St. 136, 162 N.E. 389. We cannot hold that the allowance of money damages would interfere with a discretionary activity of a political subdivision, and at the same time hold that the court may *directly* interfere with the exercise of such discretion by enjoining the discretionary activity. Therefore, the trial court's granting of summary judgment in favor of the city was appropriate.

## III. Conclusion

Because we have held that the city is entitled to summary judgment pursuant to R.C. 2744.01 *et seq.,* the appellants' third assignment of error is overruled. Because we have held that the city has submitted evidence pursuant to Civ.R. 56(C) which shows, as a matter of law, that the city is entitled to the defenses set forth in R.C. 2744.03(A)(3) and (5), the city's second cross-assignment of error is sustained. All other assignments of error are moot.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

DICKINSON, P.J., and QUILLIN, J., concur.