OPINION
{¶ 1} Appellants, the Village of Brady Lake along with forty-seven other plaintiffs, owners of real property and/or residents of the Village of Brady Lake, Portage County, Ohio, appeal from the March 23, 2005 judgment entry of the Portage County Court of Common Pleas, granting the motion of summary judgment of appellee, the City of Kent.[1]
 {¶ 2} Four previous complaints were filed by appellants against appellee, arising from the 1969 installation of appellee's Breakneck Creek well field.[2] The first case was filed in federal court in 1982, which was dismissed for lack of jurisdiction. The second and third cases were filed in the Portage County Court of Common Pleas in 1983 and 1985, which were voluntarily dismissed.
 {¶ 3} On January 24, 1992, appellants filed a fourth complaint against appellee, alleging that the pumping of ground water at appellee's Breakneck Creek municipal well field caused them unreasonable harm.[3]
 {¶ 4} Appellee later filed two motions for summary judgment.[4] On June 3, 1993, the trial court sustained appellee's first motion for summary judgment, holding that portions of appellants' cause of action were barred by the applicable four-year statute of limitations. The trial court overruled the second motion.
 {¶ 5} Appellants filed their first appeal, asserting that the trial court erred in granting appellee's first motion for summary judgment based on the statute of limitations, thereby preventing them from collecting monetary damages. This court affirmed the judgment of the trial court.
 {¶ 6} On March 12, 1998, appellants filed a fifth complaint against appellee, alleging that, as a result of the pumping of groundwater from its Breakneck Creek well field to operate its municipal water supply system, appellee inflicted unreasonable harm upon them through the lowering of the water table, the decreased quantity and quality of water in their wells, and the lowering of the water level in Brady Lake. Appellants claimed that appellee's pumping caused them to incur expenses, suffering, inconvenience, and annoyance. Appellants added that the decreased water level of Brady Lake reduced their ability to enjoy the lake and caused the value of their real property to decline. Appellants sought damages and reasonable attorney fees.
 {¶ 7} On November 15, 2000, appellee filed a motion for summary judgment, moving to dismiss the case on the grounds that appellants' claims were barred by sovereign immunity, res judicata, and Civ.R. 41(A)(1). On January 3, 2001, appellants filed a memorandum in response to appellee's motion. Appellee filed a reply on March 22, 2001.
 {¶ 8} Pursuant to its July 5, 2001 judgment entry, the trial court granted appellee's motion for summary judgment on the grounds of immunity under R.C. 2744.02. The trial court determined that appellee was immune to a claim for damages for its alleged unreasonable use of groundwater in its municipal system, holding that the General Assembly had not excepted that specific tort from the blanket immunity granted to governmental and proprietary municipal activities under R.C. 2744.02(A). The trial court ruled that, under R.C. 2744.02(B)(2), appellee was subject to liability only if the acts of its employees, which proximately caused appellants' harm, were performed in a negligent manner. Since appellants did not specifically allege that appellee's employees acted negligently in taking water from the aquifer, the trial court concluded that appellants' claim was not negligence in tort, but rather, it was the separately recognized tort of unreasonable use of, or interference with, groundwater.
 {¶ 9} Appellants filed a timely notice of appeal asserting that the trial court erred in granting appellee's motion for summary judgment. In the second appeal, this court reversed the judgment of the trial court and remanded the matter for further proceedings, noting that appellee was entitled to pursue the additional, undecided grounds for summary judgment upon remand.
 {¶ 10} On July 25, 2003, appellee filed a motion for summary judgment on remand pursuant to Civ.R. 56(B), alleging that appellants' claims were barred by political subdivision immunity for discretionary functions; Civ.R. 41(A) prohibits appellants from asserting this lawsuit because they have previously filed and dismissed two lawsuits against appellee for the same claims; the doctrine of res judicata bars appellants from re-filing claims for the reduction of the water levels in their wells that the trial court and this court previously determined to be subject to the statue of limitations; the loss of water in the wells of appellants resulted from their own neglect; most appellants possess no riparian rights to Brady Lake; and appellee's operations have not harmed appellants' use of the lake. On October 28, 2003, appellants filed their memorandum contra to appellee's motion for summary judgment. On December 1, 2003, appellee filed a reply.
 {¶ 11} Pursuant to its March 23, 2005 judgment entry, the trial court granted appellee's motion for summary judgment. The trial court determined that appellee is immune from liability; appellant Village of Brady Lake and eleven other appellants are precluded by the doctrine of res judicata from pursuing their claims; and appellant Village of Brady Lake and six other appellants have filed and then voluntarily dismissed their claims against appellee at least twice, thus, their dismissals are with prejudice and preclude the re-filing of their claims. It is from that judgment that appellants filed a timely notice of appeal and make the following assignments of error:
 {¶ 12} "[1.] The trial court erred to the prejudice of [appellants] in granting [appellee's] [m]otion for [s]ummary [j]udgment.
 {¶ 13} "[2.] The [t]rial [c]ourt erred to the prejudice of [appellants] in holding that [their] claims were barred by res judicata and Civil Rule 41(A)(1)."
 {¶ 14} In their first assignment of error, appellants argue that the trial court erred in granting appellee's motion for summary judgment. Appellants stress that a municipality that pumps groundwater from its well field, causing unreasonable harm to surrounding homeowners through the lowering of the groundwater, is not entitled to immunity under R.C. 2744.03(A)(3) and (5).
 {¶ 15} In order for a summary judgment to be granted, the moving party must prove:
 {¶ 16} "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." Mootispaw v. Eckstein (1996),76 Ohio St.3d 383, 385.
 {¶ 17} The Ohio Supreme Court stated in Dresher v. Burt
(1996), 75 Ohio St.3d 280, 296:
 {¶ 18} "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record whichdemonstrate the absence of a genuine issue of fact on a materialelement of the nonmoving party's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic.)
 {¶ 19} If the moving party satisfies this burden, then the nonmoving party has the burden, pursuant to Civ.R. 56(E), to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v.Scioto Cty. Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711. TheBrown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 20} R.C. 2744.02 provides:
 {¶ 21} "(A)(1) * * * the functions of political subdivisions are hereby classified as governmental functions and proprietary functions. Except as provided in division (B) of this section, a political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.
 {¶ 22} "* * *
 {¶ 23} "(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function * * * [.]
 {¶ 24} "* * *
 {¶ 25} "(2) * * * political subdivisions are liable for injury, death, or loss to person or property caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions."[5]
 {¶ 26} R.C. 2744.03(A) states in part: "[i]n a civil action brought against a political subdivision or an employee of a political subdivision to recover damages for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:
 {¶ 27} "* * *
 {¶ 28} "(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.
 {¶ 29} "* * *
 {¶ 30} "(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."
 {¶ 31} In McNamara v. Rittman (1998), 125 Ohio App.3d 33, the Ninth District stated that the city may be liable for injuries arising out of its establishment, maintenance, and operation of a well field if the injury was caused its negligence. Id. at 44. "However, even if the [a]ppellants prove negligence, the [c]ity may escape liability if it can prove a defense * * *." Id. "A key element in the defenses available to the [c]ity is discretion. If the [c]ity was exercising discretion or judgment, then the [c]ity is not liable, unless
that discretion was exercised with malicious purpose, bad faith, or in [a] wanton or reckless manner." Id. "If the employee's [or city's] actions were clearly not malicious, reckless, or in bad faith, then summary judgment is appropriate." Id. at 46, citingHackathorn v. Preisse (1995), 104 Ohio App.3d 768, 771-772. (Emphasis sic.)
 {¶ 32} "[N]egligence is not an element of the tort of unreasonable use of ground water pursuant to R.C. 1521.17(B). Neither the Supreme Court of Ohio decision that created the tort of unreasonable use of ground water, nor its progeny refer to negligence as an element of that tort. See Cline v. Am.Aggregates Corp. (1984), 15 Ohio St.3d 384 * * *, syllabus."Brady Lake, 148 Ohio App.3d 429, 2002-Ohio-3141, at ¶ 30 (Ford, P.J., dissenting).
 {¶ 33} In the case at bar, appellants have not proven that appellee engaged in any negligent conduct to establish an exception to immunity under R.C. 2744.02(B)(2). Appellants' complaint did not allege that appellee's employees performed negligently in the pumping of groundwater. Appellee's actions were not ministerial, day-to-day functions, but rather discretionary decisions made by high-ranking officials engaged in policy making, which are immune under R.C. 2744.03(A)(3). Lastly, appellee's actions were immune under R.C. 2744.03(A)(5) as exercises of judgment in determining whether to acquire and how to use equipment, supplies, materials, personnel, facilities, and other resources. See Perkins v. Norwood City Schools (1999),85 Ohio St.3d 191, 193. In addition, appellants have not demonstrated malicious purpose, bad faith, or willful and wanton conduct in appellee's exercise of those functions.
 {¶ 34} Based on Mootispaw, supra, it was proper for the trial court to conclude that summary judgment was appropriate. Appellants' first assignment of error is without merit.
 {¶ 35} In their second assignment of error, appellants contend that the trial court erred in holding that their claims were barred by res judicata and Civ.R. 41(A)(1). Appellants stress that their claims are not barred since they are new damages that occurred within the statute of limitations period. They allege that they are entitled to recover damages in the four-year period prior to the filing of their complaint in 1998.
 {¶ 36} Theories of res judicata are used to prevent relitigation of issues already decided by a court or matters that should have been brought as part of a previous action. "[A] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claims arising out of the transaction or occurrence that was the subject matter of the previous action." Grava v. Parkman Twp. Bd. of Zoning Appeals
(1995), 73 Ohio St.3d 379, 382. Res judicata "applies to extinguish a claim by the plaintiff against the defendant eventhough plaintiff is prepared in the second action (1) [t]opresent evidence or grounds or theories of the case not presentedin the first action, or (2) [t]o seek remedies or forms of reliefnot demanded in the first action." (Emphasis sic.) Id. at 383.
 {¶ 37} Civ.R. 41(A) provides:
 {¶ 38} "(1) * * * a plaintiff, without order of court, may dismiss all claims asserted by that plaintiff against a defendant by doing either of the following:
 {¶ 39} "(a) filing a notice of dismissal at any time before the commencement of trial unless a counterclaim which cannot remain pending for independent adjudication by the court has been served by that defendant;
 {¶ 40} "(b) filing a stipulation of dismissal signed by all parties who have appeared in the action.
 {¶ 41} "Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits of any claim that the plaintiff has once dismissed in any court."
 {¶ 42} In the case sub judice, the trial court stated the following in its March 23, 2005 judgment entry:
 {¶ 43} "Here, the former claims of party-plaintiffs Village of Brady Lake, Claude and Beulah Brown, Richard and Florence Fresch, James Hostler, Marguerite McGuigan, C. Eugene Roliff, Paul Swigart, Ashby and Wanda Thornton, and Richard Yeend have been litigated to judgment, and that judgment was adverse to these party-plaintiffs. Thus, these party-plaintiffs are precluded by the doctrine of res judicata from pursuing their claims.
 {¶ 44} "Finally, Civ.R. 41(A)(1) provides that where a claim has been voluntarily dismissed a second time, that dismissal `operates as an adjudication upon the merits of any claim that the plaintiff has once dismissed.' Here, party-plaintiffs Village of Brady Lake, Claude and Beulah Brown, Richard Feinberg, Nancy Grim, Sandra Ferris, and Richard Yeend have filed and then voluntarily dismissed their claims against Kent at least twice. Thus, their dismissals are with prejudice and preclude the refilling of their claims here."
 {¶ 45} We agree. Again, appellants filed their first case against appellee in federal court in 1982, which was dismissed for lack of jurisdiction. Seven appellants then filed two cases in the Portage County Court of Common Pleas against appellee in 1983 and 1985, which they voluntarily dismissed. Those seven appellants then participated in the case filed against appellee on January 24, 1992. Three appellants voluntarily dismissed their claims in August 1996. The remaining four appellants voluntarily dismissed the entire case the day before trial in 1997. Those seven appellants, along with others who participated in the first appeal in 1995, filed another case against appellee in 1998, for the same claims. Pursuant to the foregoing, summary judgment was appropriate under Civ.R. 41(A)(1).
 {¶ 46} In addition, in appellants' 1992 case, appellee filed for summary judgment on the grounds that the statute of limitations barred seventeen of the appellants' claims that appellee had damaged their wells. The trial court and this court determined that those appellants had remedied their well problems by drilling new wells more than four years prior to the filing of that case. However, twelve of those appellants filed the same claims in 1998. The only distinction between the present and former lawsuits is that appellants now also seek money damages for a reduction in water quality, rather than just quantity. Nevertheless, appellants' cause of action still focuses on the issue of water with respect to the operation of appellee's well field. Thus, the instant case arises out of a common nucleus of operative facts and is barred under the doctrine of res judicata. See Doolittle v. Zapis Communications Corp. (Aug. 18, 2000), 11th Dist. No. 99-T-0084, 2000 Ohio App. LEXIS 3781, at 9. Appellants' second assignment of error is without merit.
 {¶ 47} For the foregoing reasons, appellants' assignments of error are not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed.
Rice, J., O'Toole, J., concur.
[1] There have been two prior appeals before this court between the parties. Village of Brady Lake v. Kent (Nov. 3, 1995), 11th Dist. No. 94-P-0047, 1995 Ohio App. LEXIS 4889 ("first appeal"), and Village of Brady Lake v. Kent, 148 Ohio App.3d 429,2002-Ohio-3141 ("second appeal").
[2] In 1969, appellee began to pump groundwater from the well field. By 1975, appellee more than doubled its pumping and from 1975 until 1977, the water level of Brady Lake fell by five to six feet.
[3] Appellants alleged that they began suffering various problems with their individual water wells in 1975, which necessitated the drilling of new wells. Appellants further contended that they suffered harm due to the lowering of the water table. Appellants sought monetary damages to compensate them for their dry wells and injunctive relief to restrain and enjoin appellee from further reducing the water level in the lake.
[4] Appellee's first motion asserted that the statute of limitations barred seventeen of appellants' claims. Appellee's second motion sought to have the claim for injunctive relief dismissed.
[5] R.C. 2744.01(G)(2)(c) defines "proprietary function" as "[t]he establishment, maintenance, and operation of a utility, including, but not limited to * * * a municipal corporation water supply system[.]"