*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0004p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HARRY MCNAMARA, et al.,

*Plaintiffs-Appellants,*

*v.*

THE CITY OF RITTMAN,

*Defendant-Appellee.*

No. 02-3965

>

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 00-03046—Kathleen McDonald O'Malley, District Judge.

Argued: December 4, 2003

Decided and Filed: January 8, 2007

Before: KENNEDY, MARTIN, and MOORE, Circuit Judges.

---

## COUNSEL

**ARGUED:** Steve J. Edwards, Grove City, Ohio, for Appellants. Melvin L. Lute, Jr., BAKER, DUBLIKAR, BECK, WILEY & MATHEWS, North Canton, Ohio, for Appellee. **ON BRIEF:** Steve J. Edwards, Grove City, Ohio, for Appellants. Melvin L. Lute, Jr., Jack R. Baker, BAKER, DUBLIKAR, BECK, WILEY & MATHEWS, North Canton, Ohio, for Appellee.

---

## OPINION

---

BOYCE F. MARTIN, JR., Circuit Judge. This case involves a federal takings claim arising from the City of Rittman's operation of water wells that allegedly caused damage to plaintiffs. In our initial review of the district court's judgment, we requested that the Supreme Court of Ohio answer an important question of first impression involving a property owner's interest in the groundwater beneath his property. The Supreme Court of Ohio has now answered that question. For the reasons articulated below, we **AFFIRM** the decision of the district court.

1

I

In 1973, the City of Rittman, Ohio, purchased a tract of land near the City of Sterling for the purpose of drilling three wells there to serve the City of Rittman's water needs. By 1980, the City of Rittman had completed this project and began operating the wells, which now supply it with between 500,000 and 750,000 gallons of water per day.

## A.  State Court Proceedings

On January 4, 1994, the plaintiffs, all of whom are residents of the City of Sterling, filed a complaint in state court seeking damages and injunctive relief against the City of Rittman. The plaintiffs alleged that the City of Rittman's use of the three new wells lowered their aquifer, causing them to suffer water shortages and adversely affecting the quality of their water. Additionally, the plaintiffs alleged that the City of Rittman's actions forced them to drill new wells and purchase new water pumps and water-softening equipment. The plaintiffs argued that the City of Rittman's activities constituted an "unreasonable dewatering" pursuant to the cause of action recognized by the Supreme Court of Ohio in *Cline v. American Aggregates Corporation*, 474 N.E.2d 324 (Ohio 1984). The state trial court granted summary judgment to the City of Rittman based on sovereign immunity and statute of limitations grounds. The court of appeals affirmed under similar reasoning, noting that the *Cline* rules are only of immediate concern in dewatering actions brought against *private* defendants. *McNamara v. City of Rittman*, 707 N.E.2d 967, 972 (Ohio Ct. App. 1998). Where the defendant is a political subdivision of the state, however, the sovereign immunity inquiry necessarily precedes any analysis under *Cline*. *Id.* Here, the state court of appeals affirmed that sovereign immunity bars the plaintiffs' prayers for relief, whether for damages or an injunction. *Id.* The Supreme Court of Ohio dismissed the plaintiffs' appeal as improvidently granted. *McNamara v. City of Rittman*, 707 N.E.2d 943 (Ohio 1999).

## B.  Federal Court Proceedings

On December 7, 2000, the plaintiffs filed a federal complaint seeking relief under 42 U.S.C. § 1983, alleging that the City of Rittman's actions constituted (1) a taking of their property without just compensation in violation of the Fifth Amendment, and (2) a violation of their right to procedural due process under the Fifth and Fourteenth Amendments. The district court concluded that the plaintiffs' takings claim was time-barred by the statute of limitations:

> [N]either *Williamson County* [*Regional Planning Commission v. Hamilton Bank*, 473 U.S. 172 (1985)] nor any subsequent takings case law holds that a plaintiff must pursue *all conceivable means* of remedy before a federal takings claim is ripe. . . . *Williamson County* requires only that a plaintiff attempt to obtain just compensation for a taking through procedures designated for that purpose. *Williamson County*, 473 U.S. at 194-95. Where that procedure is deemed inadequate, as it has been in Ohio, *see Kruse* [*v. Village of Chagrin Falls*,] 74 F.3d at 698, then a takings claim is ripe immediately. . . . Accordingly, the Court finds that Plaintiffs' takings claim ripened immediately when Plaintiffs knew or should have known of the underlying injury. Plaintiffs must have acquired this knowledge no later than when Plaintiffs filed their state court Complaint. *See Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir. 1989). Because the statute of limitations on § 1983 claims in Ohio is two years, and because Plaintiffs did not file their takings claim in federal court until six years after they filed their state Complaint, their takings claim is barred by the statute of limitations.

D. Ct. Op., Aug. 8, 2002, at 10-11 (emphasis in original). As for the plaintiffs' due process claim, the district court ruled that it was similarly time-barred, because "Plaintiffs' procedural due process claim, like their takings claim, ripened immediately when Plaintiffs knew or should have known of the underlying injury." *Id.* at 15.

This panel heard the appeal of the district court judgment on December 4, 2003. We determined that the takings issue could not be resolved without first understanding whether an "unreasonable dewatering" action under *Cline* implicates property rights. Thus, we filed an order certifying the following question to the Supreme Court of Ohio: "Does an Ohio homeowner have a *property* interest in so much of the groundwater located beneath the land owner's property as is necessary to the use and enjoyment of the owner's home?" On December 21, 2005, the Supreme Court of Ohio answered this question in the affirmative, holding that "Ohio landowners have a property interest in the groundwater underlying their land," and thus "governmental interference with that right can constitute an unconstitutional taking." *McNamara v. City of Rittman*, 838 N.E.2d 640, 646 (Ohio 2005). Having received this answer, we are confident that our Circuit's takings jurisprudence—in particular, that portion pertaining to takings under Ohio law—applies full force to this appeal.

II

This Court reviews *de novo* a district court's holding that a legal claim is barred by the applicable statute of limitations period. *See Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003). "The statute of limitations for federal civil rights claims is the appropriate state statute of limitations." *Lawson v. Shelby County*, 211 F.3d 331, 336 (6th Cir. 2000) (citing *Wilson v. Garcia*, 471 U.S. 261). In this case, the parties agreed that the applicable statute of limitations is two years. *See* Ohio Rev. Code § 2305.10.[1] Based on this statute of limitations, the district court dismissed the action because the federal § 1983 action was filed six years after the filing of the claim in state court. The district court found that plaintiffs knew of their injury, at the very latest, at the time of filing the state court action in 1994, thus making the action four years late.

While we agree with the district court's ultimate resolution of the matter, it is important to clarify some of the nuances of this case not addressed in its opinion. In particular, we have separated our analysis into two parts: (1) "past violations" — based on the premise that the constitutional violation committed by the City, if any was committed at all, has already occurred; and (2) "continuing violations" — based on the notion that a new constitutional violation, if any exists, continues to be committed by the City, and inflicted on the plaintiffs, each day. *See Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 522 (6th Cir. 1997).

*A. Past Violations*

In its December 2000 complaint before the district court, the plaintiffs' primary allegation was that the City's dewatering of their wells represented an unconstitutional taking of their property, and that they should be entitled to damages—compensation in the form of $25,000 per individual plaintiff—for this taking. A threshold question in any federal takings action, however, is whether or not the case is ripe for review; for if it is not ripe, then we lack jurisdiction to hear the case. *Williamson*, 473 U.S. at 194-95. In *Williamson*, the Supreme Court ruled that constitutional takings claims are not ripe for federal court review until state compensation procedures, assuming they exist and are adequate, have been exhausted:

> The recognition that a property owner has not suffered a violation of the Just
> Compensation Clause until the owner has unsuccessfully attempted to obtain just

---

[1] In 2004, the Ohio legislature added a time-limitation provision in actions "[f]or relief on the grounds of a physical or regulatory taking of real property." Ohio Rev. Code § 2305.09(E). This new limitations period is four years, not two. Thus, any takings actions brought after 2004 should follow the four-year time bar, and this could be relevant to any continuing violations actions plaintiffs may wish to bring in the future, as discussed in Part II-B of this opinion. However, as to the original action brought by the plaintiffs and dismissed by the state and district courts on statute of limitations grounds, the two-year limit properly applies.

compensation through the procedures provided by the State for obtaining such compensation is analogous to the Court's holding in *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). There, the Court ruled that a person deprived of property through a random and unauthorized act by a state employee does not state a claim under the Due Process Clause merely by alleging the deprivation of property. In such a situation, the Constitution does not require predeprivation process because it would be impossible or impracticable to provide a meaningful hearing before the deprivation. Instead, the Constitution is satisfied by the provision of meaningful postdeprivation process. Thus, the State's action is not "complete" in the sense of causing a constitutional injury "unless or until the State fails to provide an adequate postdeprivation remedy for the property loss." *Hudson v. Palmer*, 468 U.S. 517, 532, n. 12, 104 S.Ct. 3194, 3203, n. 12, 82 L.Ed.2d 393 (1984). Likewise, because the Constitution does not require pretaking compensation, and is instead satisfied by a reasonable and adequate provision for obtaining compensation after the taking, the State's action here is not "complete" until the State fails to provide adequate compensation for the taking.

*Id.* at 195.

The critical inquiry after *Williamson*, therefore, is whether or not the state compensation procedures are "reasonable, certain, and adequate." *Id.* at 194. This inquiry is necessarily time-specific, because a state may have inadequate compensation procedures at one point in time, but these may at a later date be rectified by statute (via the state legislature) or through evolution of the common law (via state courts). *See Arnett v. Myers*, 281 F.3d 552, 563 (6th Cir. 2002) (stating that "*Williamson* specifically instructs that the relevant time frame for determining the adequacy of state provisions for obtaining just compensation for an alleged taking is 'at the time of the taking'"). This is exactly what happened in the 1990s in Ohio.

Ohio currently has a "reasonable, certain, and adequate procedure" available to takings claimants in state courts:

Ohio does not have an inverse condemnation or other direct, statutory cause of action for plaintiffs seeking just compensation for a taking. Rather, Ohio law provides a statutory mechanism by which the government actor seeking to take property is under a duty to bring an appropriation proceeding against the landowner. *See* Ohio Rev. Code §§ 163.01-163.62; *Shemo v. City of Mayfield Heights*, 95 Ohio St. 3d 59, 765 N.E.2d 345, 350 (2002). A property owner who believes that his property has been taken in the absence of such an appropriation proceeding may initiate a mandamus action in Ohio court to force the government actor into the correct appropriation proceeding.... Over the last ten years Ohio courts, including the Ohio Supreme Court, have consistently recognized mandamus as the vehicle with which to contest an involuntary taking, no matter whether that taking is a regulatory or a physical one, and no matter whether the public actor is a state or local entity.

*Coles v. Granville*, 448 F.3d 853, 861, 865 (6th Cir. 2006). However, it was not until 1994 that the availability of such a mandamus action was made explicit by the Supreme Court of Ohio. *See Levin v. City of Sheffield Lake*, 637 N.E.2d 319, 323-34 (Ohio 1994); *see also Coles*, 448 F.3d at 864 (noting that in Ohio, the *Levin* decision was the "genesis of the modern recognition of the mandamus action to force appropriation proceedings"). Thus, prior to the *Levin* decision, Ohio's compensation procedures in takings cases were decidedly *not* adequate. *Williamson* therefore had little impact on takings claims brought in Ohio prior to *Levin*, as such claims were immediately ripe for federal review.

The plaintiffs in the instant case filed their original state-court complaint on January 4, 1994, roughly six months prior to the issuance of *Levin*. The date on which the plaintiffs filed their state-court complaint is, logically, the latest time at which they could have first known of their injury. Because there was no "reasonable, certain, and adequate procedure" available to takings claimants in Ohio state courts prior to the *Levin* decision, and because the alleged deprivation here occurred prior to *Levin*, the plaintiffs' claim was ripe for federal review already in 1994. And because it was ripe for review in 1994, it was consequently time-barred when the plaintiffs filed in federal court in 2000, well past the then two-year statute of limitations for § 1983 takings actions.

The plaintiffs' procedural due process claims pertaining to past violations by the City are similarly time-barred. "Procedural due process and equal protection claims that are ancillary to taking claims are subject to the same *Williamson* ripeness requirements . . . ." *Arnett*, 281 F.3d at 562; *see also Bigelow v. Michigan Dep't of Natural Res.*, 970 F.2d 154, 159-60 (6th Cir. 1992). This requires the plaintiffs to show that they had pursued an adequate state measure for obtaining just compensation before their due process claim would be ripe. Because no adequate measure existed at the time, however, the due process claim was ripe concurrent with the takings claim, and as such it too is barred.[2]

### B. Continuing Violations

The district court did not consider whether this case might implicate the "continuing violation" doctrine for purposes of the statute of limitations. "Ordinarily, the limitations period starts to run when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Kuhnle Brothers, Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (internal quotation marks and citations omitted). The limitations period will not bar all actions for all time, however, as in certain cases where there is a "continuing violation . . . which inflict[s] continuing and accumulating harm . . . ." *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 502 n.15. (1968) (discussing the government's continuing violation of a company's rights under the Sherman Act). In other words, "[a] law that works an ongoing violation of constitutional rights does not become immunized from legal challenge for all time merely because no one challenges it within two years of its enactment." *Kuhnle*, 103 F.3d at 522.

The primary reason why the district court failed to consider the continuing violation issue is because it was not properly raised before that court. Although we have discretion to rule on an issue of law even in the absence of its proper development below, *see Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1461 (6th Cir. 1988), we decline to exercise such discretion here. If we were to do so, we would be ruling on a takings claim not brought before the state courts in 1994, nor before the district court in 2000, but before *this* Court in 2006.[3] And such a claim, brought for the first time in 2006, would not be ripe for our review. *See Coles*, 448 F.3d at 865. Because "[t]oday, Ohio has 'reasonable, certain, and adequate procedures' for plaintiffs to pursue compensation for an involuntary taking," and because "there is no dispute that Plaintiffs have failed to request mandamus from the state," plaintiffs' continuing-violation takings claim is not yet ripe for review. *Id.* The proper course is for plaintiffs first to file a mandamus action in state court based on their continuing-violations theory.

---

[2] Although the district court came to the same ultimate result as we do now, it was incorrect for the court to have conducted a *separate* ripeness analysis for the due process claim. *See* D. Ct. Op., Aug. 8, 2002, at 12-14. Rather, because the procedural due process claim in this case is not independent of the underlying takings claim, ripeness analysis for the takings claims necessarily subsumes ripeness analysis for the due process claim.

[3] The issue of continuing violations was first properly raised in the parties' letter briefs submitted to this Court in March 2006.

It may seem a bit perverse that one takings claim (past violations) be barred by statute of limitations because it was delinquently filed in federal court, and yet a similar claim (continuing violations) be barred by ripeness because it was prematurely filed in federal court. But this is the nature of federal-state interplay after *Williamson*, a dance made more awkward when actions, as here, both pre- and post-date the Ohio Supreme Court's decision in *Levin*. This Court's decision in *Coles*, however, has significantly clarified how such cases should be handled in the future. *See also* Stewart E. Sterk, *The Demise of Federal Takings Litigation*, 48 WM. & MARY L. REV. 251, 292-300 (2006) (discussing "Takings Federalism" in the context of the *Williamson* ripeness requirement, and noting that if federal courts "were free to hear takings claims in the first instance, their determinations would not have the benefit of any comparable record with respect to state law").

For identical reasons, we decline to consider the plaintiffs' continuing-violation due process claim, which is ancillary to the continuing-violation takings claim. *See Bigelow*, 970 F.2d 154, 160 ("Until the state courts have ruled on the plaintiffs' inverse condemnation claim, this court cannot determine whether a taking has occurred, and thus cannot address the procedural due process claim with a full understanding of the relevant facts.").

### III

Based on the discussion above, we **AFFIRM** the district court's grant of summary judgment in favor of the City of Rittman.